UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| | | | |
|---|---|---|---|
| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

Bankruptcy No.: 6:09-bk-36828 SY; Adversary No. 6:14-ap-01250 SY

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Anne Kielwasser | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Daniel Bussel | Todd Toral | |
| Whitman Holt | John Clarke, Jr. | |

**Proceedings:** FDIC-RECEIVER'S MOTION TO WITHDRAW THE BANKRUPTCY REFERENCE (Dkt. No. 9, filed November 5, 2014)

## I. INTRODUCTION

On September 24, 2014, Helen R. Frazer, Chapter 7 Trustee of Temecula Valley Bancorp. Inc. ("the Trustee"), filed this adversary proceeding in the U.S. Bankruptcy Court for the Central District of California against defendant Federal Deposit Insurance Corporation ("FDIC") in its capacity as Receiver of Temecula Valley Bank (the "Bank"). Dkt. No.2 Ex. C. ("Compl."). The Trustee seeks a declaration that the bankruptcy estate of Temecula Valley Bancorp, Inc. ("Bancorp") is entitled to ownership of certain tax refunds currently held in an escrow account. See generally id. On November 5, 2014, the FDIC filed its amended motion to withdraw the bankruptcy reference and have the adversary proceeding heard in this Court. Dkt. No. 9. The Trustee filed an opposition on November 17, 2014. Dkt. No. 12. The FDIC replied on November 24. Dkt. No. 17. On December 8, 2014, the Court held a hearing on the matter. For the reasons that follow, the Court DENIES the motion.

## II. BACKGROUND

In 2002, a non-bankruptcy corporate reorganization made Bancorp the parent corporation of the Bank. Compl. ¶ 13. Bancorp was a holding company that "conduct[ed] no business of its own other than owning the common shares of" the Bank and several statutory trusts that issued Bancorp's junior subordinated debt. Temecula Valley Bancorp, Inc. Annual Report at 5 (Form 10-K) (Mar. 17, 2009). On June 3, 2002,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'   JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

Bancorp and the Bank entered into a Tax Sharing Agreement ("TSA"). Compl. ¶ 19; see Toral Decl. Ex. A-1. Pursuant to the TSA, Bancorp filed consolidated tax returns on behalf of Bancorp and the Bank, collectively as the "Bancorp Group." Compl. ¶ 21. The TSA provides for the Bank to estimate its share of tax liabilities and benefits and, depending on whether that estimated amount is positive or negative, pay or receive that amount to or from Bancorp. Id. ¶¶ 22, 23. Bancorp, in turn, is to remit the Bancorp Group's estimated tax payments to the appropriate taxing authority. Id. ¶ 24.

On July 17, 2009, the California Department of Financial Institutions closed the Bank and placed it under the FDIC's receivership. Id. ¶ 14. The FDIC subsequently established a bar date of October 20, 2009 for the filing of any claims seeking a determination of rights with respect to the Bank's assets. Dkt. No. 1, Memo. Supp. Mot. at 4. Neither Bancorp nor the Trustee ever filed a claim with the receivership. Id. Bancorp filed for bankruptcy under Chapter 7 of the Bankruptcy Code on November 6, 2009. Compl. ¶¶ 6, 15. The Trustee was appointed on the same date. Id. ¶¶ 7, 15.

The adversary proceeding concerns the ownership of tax refunds received as a result of "large taxable losses generated by the Bancorp Group in 2008 and 2009, which could be carried back to reduce the income of the Bancorp Group in other [pre-bankruptcy] tax years." Id. ¶ 30. The Trustee asserts that, pursuant to the TSA, "the Bank is a creditor of Bancorp to the extent that the Bancorp Group's income tax liability for a given year changes as the result of a loss carryback, an audit, or an amended return" that results in a recomputed tax liability for the Bank smaller than the amount the Bank paid to Bancorp. Id. ¶ 27. According to the Trustee, the TSA "contains no provision creating a trustee-trustor relationship or a principal-agent relationship with respect to any tax refunds, and no grounds exist for implying the existence of any such relationship. Rather, the TSA creates a debtor-creditor relationship with respect to tax refunds received by Bancorp." Id. ¶ 29. Accordingly, the Trustee asserts that she "is entitled to immediate payment, possession, and ownership" of the tax refunds, and that any rights of the FDIC or Bank with respect to those funds "are properly asserted, if at all, solely in the form of a general unsecured claim against the Bancorp bankruptcy estate." Id. ¶ 46. The FDIC, on the other hand, has asserted in proofs of claim and otherwise that the tax refunds are the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

property of the FDIC as the Bank's statutory successor.[1] Memo. Supp. Mot. Withdraw at 3. Pursuant to an April 23, 2010 stipulation between the parties, refunds attributable to the Bancorp Group's filing of consolidated tax returns have been deposited into a specially-created reserve account. Compl. ¶ 31. As of August 31, 2014, the balance in this account totaled just over $34 million.

In May 2013, the parties entered into a tolling agreement staying litigation of the instant dispute until the Ninth Circuit issued a mandate in the case of FDIC v. Siegel (In re IndyMac Bancorp, Inc.), No. 12–56218. Compl. ¶ 41. That mandate issued on July 9, 2014. Id. The Trustee commenced the adversary proceeding on September 24, 2014.

### III. LEGAL STANDARD

Withdrawal of the reference of an adversary proceeding from bankruptcy court is governed by 28 U.S.C. § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion, or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). This statute "contains two distinct provisions: the first sentence allows permissive withdrawal, while the second sentence requires mandatory withdrawal in certain situations." In re Coe-Truman Techs., Inc., 214 B.R. 183, 185 (N.D. Ill. 1997). Under either provision, the "burden of persuasion is on the party seeking withdrawal." FTC v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.), 282 B.R. 894, 902 (C.D. Cal.2001).

---

[1] The FDIC has asserted in the alternative that to the extent any tax refunds are found by a court to be the property of the Bancorp bankruptcy estate, the FDIC will have an unsecured claim in the bankruptcy proceeding for the full amount of those refunds. See Memo. Supp. Mot. Withdraw at 3 n.3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

Withdrawal is mandatory if "resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d); Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers, 124 F.3d 999, 1008 (9th Cir.1997). The Ninth Circuit has suggested that mandatory withdrawal hinges "on the presence of substantial and material questions of federal law." See id. at 1008 n. 4 ("By contrast, permissive withdrawal does not hinge on the presence of substantial and material questions of federal law.").[2] The mandatory withdrawal provision should be construed narrowly so as to avoid creating an " 'escape hatch' by which bankruptcy matters could easily be removed to the district court." In re Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir.1996). Thus, the consideration of non-bankruptcy federal law must entail more than "routine application" to warrant mandatory withdrawal. In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990); see also Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc., 355 B.R. 214, 222 (D. Haw. 2006) ("Cases involving significant interpretation require mandatory withdrawal, while those involving simple application do not." (citing City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2nd Cir. 1991)).

Withdrawal is permissive "for cause shown." 28 U.S.C. § 157(d); Sec. Farms, 124 F.2d at 1008. To determine whether cause for permissive withdrawal exists, a district court "should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993). Next, the "district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Sec. Farms, 124 F.3d at 1008 (citing In re Orion Pictures Corp., 4 F.3d at 1101). "It is within a district court's discretion to grant or deny a motion for permissive withdrawal of reference; that decision will not be disturbed unless the court abuses its discretion." In re

---

[2] District courts that have surveyed decisions have concluded that, although the Ninth Circuit has addressed the correct standard only in dicta, the "majority of courts" in the circuit have adopted a "substantial and material" standard. See In re Imperial Capital Bancorp, Inc., No. 11-cv-2065, 2012 WL 10710, at *1–2 (S.D. Cal. Jan. 3, 2012); accord In re Tamalpais Bancorp, 451 B.R. 6, 8–9 (N.D. Cal. 2011) (explaining that "[c]ourts within the Ninth Circuit have largely adopted" the approach of requiring "the interpretation, as opposed to mere application, of the non-title 11 statute").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

EPD Inv. Co. LLC, No. cv-13-05536 SJO, 2013 WL 5352953, at *2 (C.D. Cal. Sept. 24, 2013) (citing In re Cinematronics, Inc., 916 F.2d 1444, 1451 (9th Cir. 1990)).

## IV.   ANALYSIS

### A.   Mandatory Withdrawal

The FDIC argues that adjudication of the adversary proceeding will require substantial and material consideration of non-bankruptcy federal law. But as explained below, the FDIC merely raises federal defenses that a clear majority of courts have found inapplicable or inconsequential, and insufficient to mandate withdrawal.

#### 1.   12 U.S.C. § 1821(d)(13)(D)

##### a.   Background

First, the FDIC contends that resolution of the adversary proceeding will require interpretation of the receivership claims provisions and a related jurisdictional bar contained in the Federal Deposit Insurance Act, as amended by the Financial Institutions, Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). The statute provides in relevant part:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>
> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D)(i)–(ii). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims

Case 5:14-cv-02244-CAS   Document 22   Filed 12/08/14   Page 6 of 19   Page ID #:520

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
| Title | IN RE TEMECULA VALLEY BANCORP, INC. | | |

process has been completed.' " McCarthy v. FDIC, 348 F.3d 1075, 1078 (9th Cir. 2003) (quoting Sharpe v. FDIC, 126 F.3d 1147, 1156 (9th Cir. 1997)). "FIRREA's exhaustion requirement applies to *any* claim or action respecting the assets of a failed institution for which the FDIC is receiver." McCarthy, 348 F.3d at 1081 (emphasis in original). The Ninth Circuit has held that "a claimant must complete the claims process before seeking judicial review," and that courts lack subject matter jurisdiction over any claim for which the administrative exhaustion process is not completed Id. at 1079, 1081.

The FDIC asserts that, under this provision, no court has jurisdiction over the adversary proceeding, but that making that determination will involve substantial questions of federal law that should be handled by an Article III court. Specifically, the FDIC asserts that the action seeks "a judicial determination of rights with respects to the assets of [a] depository institution for which the [FDIC] has been appointed receiver," and that the FDIC need not "first establish its ownership of the disputed tax refunds for FIRREA's exhaustion requirement to apply." Memo. Supp. Mot. at 10.

b.      FIRREA's Jurisdictional Bar Does Not Mandate Withdrawal

The issue before the Court is not whether FIRREA's jurisdictional bar applies, but whether consideration of that provision mandates withdrawal. The FDIC has cited one out-of-circuit bankruptcy court that has so found. See Lange v. FDIC (In re TierOne Corp.), Adv. No. 11–4018–TLS, 2011 WL 2133702 (Bankr. D. Neb. May 27, 2011). In that case, like this one, the trustee of a failed bank's holding company filed an adversary proceeding seeking a declaration that "certain tax refunds are property of the bankruptcy estate." Id. at *1. The bankruptcy court found withdrawal mandatory because adjudication of the dispute would require "interpretation of the tax allocation agreement, which will involve consideration of a 1998 FDIC policy statement on income tax allocation in a holding company structure" and other tax and banking law. Id. at *3. The bankruptcy court also noted that § 1821(d)(13)(D)'s jurisdictional bar "would seem to preclude this court's involvement in the adversary proceeding" because it extends to "any action seeking a determination of rights with respect to the assets of the bank," including "the ascertainment of whether the refunds constitute assets of the bank." Id. at *4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

(internal quotation marks omitted).³  The Court has found one additional case that, although it did not concern a tax refund, supports the FDIC's position by stating that "cases involving FIRREA require mandatory withdrawal of the reference." CM Capital Servs., LLC v. Stewart Title, No. 2:10-CV-317 JCM (LRL), 2010 WL 4606523, at *2 (D. Nev. Nov. 5, 2010).  But see Green v. FDIC (In re Tamalpais Bancorp), 451 B.R. 6, 9 (N.D. Cal. 2011) ("To the extent that the CM Capital Services court granted mandatory withdrawal simply because a particular federal statute was to be applied, albeit mechanically, to the facts of the case, that court represents the minority position.  The mere presence of FIRREA-based defenses does not satisfy FDIC's burden of identifying novel issues of law that are likely to arise in the adversary proceeding.").

But multiple district courts within the Ninth Circuit have found in similar cases that § 1821(d)(13)(D) *does not* mandate withdrawal.  See FirstFed Fin. Corp. v. FDIC, CV 12-4914-JFW, slip op. at 3–4 (C.D. Cal. Aug. 7, 2012) (Trustee RJN Ex. 2) ("[T]he Court concludes, like many other district courts, that mandatory withdrawal is not required merely because the bankruptcy court may have to consider FIRREA and whether to apply the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).");⁴ Tamalpais, 451

---

³The Court finds inapposite the other cases cited by the FDIC in the same paragraph as Lange.  One withdrew the reference because of the uncertain application of a different FIRREA provision, but specifically rejected an argument based on § 1821(d). See In re Imperial Capital Bancorp, Inc., No. 11-cv-2065, 2012 WL 10710, at *3 n.1 (S.D. Cal. Jan. 3, 2012). In another, no party refuted the FDIC's assertion that withdrawal was mandatory because "substantial and material consideration of FIRREA [was] likely to be required."  See Lubin v. Cincinnati Ins. Co., 411 B.R. 801, 804 (N.D. Ga. 2009).  In the last, the parties *consented* to withdrawal of an adversary proceeding involving tax refunds, insurance refunds, and other personal property, along with another adversary proceeding and a contested proof of claim, and the court did not indicate, in the preliminary hearing the FDIC cites, which withdrawal arguments the court found "compelling" based on "preliminary research."  Colonial BancGroup, Inc. v. FDIC, Civ. A. No. 1:20-mc-3502-MT, slip. op. at 3 (M.D. Ala. May. 10, 2010) (attached to Toral Decl., Ex. D); see Toral Decl. Ex. E.

⁴Each party requests judicial notice of unpublished slip opinions issued by federal courts.  A court "may take notice of proceedings in other courts, both within and without

Case 5:14-cv-02244-CAS   Document 22   Filed 12/08/14   Page 8 of 19   Page ID #:522

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

B.R. at 9 (finding mandatory withdrawal inappropriate even though the FDIC cited § 1821(d) and numerous other federal defenses); Capital Corp. of the W. v. FDIC, No. CV F 11-1454 LJO, slip op. at 8–9 (E.D. Cal. Sept. 28, 2011) (Trustee RJN Ex. 4) ("[A]lthough section 1821(d) issues may arise, they are not substantial and material questions of non-bankruptcy federal law."). District courts in other circuits have concurred. See, e.g., Fort v. FDIC (In re First Nat'l Bancshares, Inc.), C/A No. 7:12–3441–TMC, 2014 WL 108372, at *2–4 (D.S.C. Jan. 10, 2014) (rejecting in a similar case the argument that §1821(d)(13)(D) and other FIRREA provisions mandate withdrawal); Hasset v. FDIC (In re CIS Corp.), 140 B.R. 351, 352–53 (S.D.N.Y. 1992) ("[T]he jurisdictional issue arising under FIRREA does not mandate withdrawal.").[5] The Court finds this clear weight of authority more persuasive than Lange, despite the FDIC's following attempts to distinguish it.

     First, the FDIC argues that these cases miss the point that no matter the outcome of the adversary proceeding, it concerns an "asset" of the FDIC under § 1821(d)(13)(D) because the receiver either owns (1) the tax refunds at issue, as the FDIC maintains, or (2) a general unsecured claim against the Bancorp bankruptcy estate, as the Trustee asserts. To support this argument, the FDIC relies on National Union Fire Insurance Co. v. City Savings, F.S.B., 28 F.3d 376, 385 (3d Cir. 1994), which held that insurance policies issued to a corporation that was later closed by the Office of Thrift Supervision

---

the federal judicial system, if those proceedings have a direct relation to matters at issue." United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir.1992). The Court takes judicial notice of these opinions to the extent that it relies upon them.

    [5]Furthermore, two bankruptcy courts within this district have substantively analyzed § 1821(d)(13)(D) in similar contexts and determined that the bar did not apply. See Liquidating Trust v. FDIC (In re First Reg. Bancorp.), Adv. No. 2:14-ap-01221-ER, slip op. at 9–10 (Bankr. C.D. Cal. Sept. 23, 2014) (Toral Decl. Ex. H) (determining that the bankruptcy court had jurisdiction over an adversary proceeding to determine the ownership of tax refunds notwithstanding § 1281(d)); Sharp v. FDIC (In re Vineyard Nat'l Bancorp.), Adv. No. 2:10–AP–01815 RN, 2013 WL 1867987, at *5 (Bankr. C.D. Cal. May 3, 2013) ("[T]he issue of whether the tax-refund is an asset of the FDIC[] or the Debtor is outside the ambit of FIRREA under § 1821(d)(13)(D)(i).").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

were "assets" of the corporation's receiver pursuant to § 1821(d)(13)(D). The Third Circuit cited myriad court decisions, the fact that a policyholder purchases the policy, and the belief that "business people consider an insurance policy to be an asset of the named insured" in concluding that an insurance policy is an asset regardless of whether the policyholder "will ultimately be entitled to collect under the insurance policies." Id. at 384. These considerations are not so obviously presented by a subsidiary's unsecured claim to tax refunds owed by its parent corporation, and the FDIC cites no court that has made this analytical leap.[6] Moreover, it was undisputed in National Union that the receiver owned the insurance *policies*, which the Third Circuit found to be assets; the dispute was whether the receiver would be able to collect on insurance *claims* in light of a contention that the policies were rescindable. See id. at 380–81. Therefore, the Court does not find National Union as relevant as the FDIC insists. The FDIC cites two bankruptcy court cases in further support of this argument, but neither involved a disputed tax refund. See Bloom v. FDIC (In re First State Bancorp.), 498 B.R. 322, 326–29 (Bankr. D.N.M. 2013) (fraudulent transfer claim in which the trustee alleged that the debtor institution had received less than a reasonably equivalent value in exchange for obligating itself to capital maintenance requirements); Amsave Credit Corp. v. Resolution Trust Corp. (In re Am. Mortg. & Invest. Servs., Inc.), 141 B.R. 578, 580–81 (Bankr. D.N.J. 1992) (validity of lien on loans held by a failed bank).[7]

---

[6] Indeed, even the Lange court appears to have assumed that tax refunds would not be considered an asset of the FDIC if the FDIC were to lose the adversary proceeding. See 2011 WL 2133702, at *4 (characterizing the dispute as "the ascertainment of whether the refunds constitute assets of the bank").

[7] The Bloom court acknowledged contrary authority on this point. See In re All Season's Kitchen, Inc., 145 B.R. 391, 402–03 (Bankr. D.Vt. 1992) ("The plain language of the statute . . . limits our jurisdiction only if FDIC in fact has an asset. Accordingly, we believe that the Bankruptcy Court, in the exercise of its jurisdiction to determine jurisdiction, must determine whether FDIC in fact has an asset."); Scott v. Resolution Trust Corp. (In re Scott), 157 B.R. 297, 315 (Bankr. W.D. Tex. 1993), op. withdrawn at request of parties, 162 B.R. 1004 (Bankr. W.D. Tex. 1994) ("FIRREA's jurisdictional bar applies only to actions seeking a determination of rights with respect to *assets* of a failed depository institution not to property merely *claimed* to be an asset by the receiver." (emphasis in original)). Moreover, a bankruptcy court in this district has declined to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

      Moreover, other courts have reached a contrary conclusion on more analogous facts. The only Court of Appeals case on the issue cited by either party is Zucker v. FDIC (In re BankUnited Financial Corp.), 727 F.3d 1100 (11th Cir. 2013). That case also involved the allocation of tax refunds pursuant to a tax sharing agreement entered into by a holding company and its subsidiary bank Id. at 1103. There, as here, the FDIC argued that § 1821(d)(13)(D) "precluded the Bankruptcy Court from deciding the issue because . . . the tax refunds constitute an asset of the FDIC receivership." Id. at 1104 n.5. The court rejected this argument, as "unpersuasive," reasoning: "Section 1821(d)(13)(D) applies only to assets of the FDIC's receivership. It therefore does not preclude the Bankruptcy Court from determining the threshold question of whether the tax refunds are an asset of the bankruptcy estate." Id.; see also FDIC v. FBOP Corp., No. 14 C 4307, 2014 WL 4344655, at *3 (N.D. Ill. Sept. 2, 2014) ("Notwithstanding the FDIC's assertion that the refund belongs to the Banks, and is thus an 'asset' of the Banks, the court has not yet made such a determination."); First Nat'l Bancshares, 2014 WL 108372, at *3–4 (adopting the reasoning of the Eleventh Circuit on this issue); Vineyard National, 2013 WL 1867987, at *5 ("FIRREA's administrative claims exhaustion requirement is not invoked at the stage where the court is determining whether the *res* in question is an 'asset' of the failed banking institution."); Liquidating Trust, slip op. at 9–10 (The "applicability of [§ 1821(d)(13)(D)] requires an initial determination that the tax refund is property of the receivership and not property of the bankruptcy estate"). In line with these authorities, the Court rejects the FDIC's assertion that an withdrawal is mandatory because "asset" of the FDIC is involved no matter what the outcome of the adversary proceeding.[8]

---

follow Amsave in light of Ninth Circuit precedent by which the Amsave court was not bound. See Vineyard Nat'l Bancorp., 2013 WL 1867987, at *5–6.

    [8]The FDIC attempts to buttress its argument by contesting the continued validity of In re Parker North American Corp., which found § 1821(d)(13)(D) inapplicable to "an action to determine whether the [receiver] actually has an asset. " 24 F.3d 1145, 1154 (9th Cir. 1994) (alterations in original). But even assuming that Parker is no longer good law in any respect, that would not mandate withdrawal because most of the cases the Court relies on in rejecting the FDIC's § 1821(d) argument *do not even cite Parker*. See, e.g., Nat'l Bancshares, 2014 WL 108372, at *2–4; FirstFed, slip op. at 2–4 (Trustee RJN Ex. 2); Tamalpais, 451 B.R. at 9; Capital Corp., slip op. at 8–9 (Trustee RJN Ex. 4); CIS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'    JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

     The FDIC also argues that the Trustee's cited tax refund cases are inapposite because, unlike those cases, the instant adversary proceeding does not include an objection to an FDIC proof of claim. But the FDIC offers no persuasive explanation for why this renders irrelevant the bevy of cases holding that the FDIC's raising of § 1821(d)(13)(D) as a jurisdictional defense does not present the sort of substantial and material consideration of non-bankruptcy federal law that requires mandatory withdrawal, and the FDIC has cited no case holding that the absence of an objection to a proof of claim makes such a difference. Moreover, at least one court in this circuit does not appear to have found this distinction significant. The court in Green v. FDIC (In re Tamalpais Bancorp), 451 B.R. 6 (N.D. Cal. 2011) considered a declaratory relief action brought by a Chapter 7 trustee against the FDIC to determine whether a failed bank in receivership or its parent holding company owned certain tax refunds. The Tamalpais court did not mention any proof of claim filed by the FDIC, or that the adversary proceeding involved an objection thereto. See generally id. Still, the court rejected the FDIC's argument that § 1821(d)'s jurisdictional bar and other federal defenses mandated withdrawal, *even though* the court found that the dispute involved a "traditional contract action arising under state law" and that, largely for that reason, *permissive* withdrawal was appropriate. Id. at *10–12; cf. FBOP Corp., 2014 WL 4344655, at *3 (determining in a non-bankruptcy context that § 1821(d)(13)(D) does not preclude jurisdiction over the determination of whether a tax refund actually belongs to a failed bank).[9]

---

Corp., 140 B.R. at 352–53. Further, the Ninth Circuit has not overruled Parker, but has instead limited it to the "special context of bankruptcy," and noted reasons for its continued applicability in that context. McCarthy v. FDIC, 348 F.3d 1075, 1078–79 (9th Cir. 2003); see Vineyard Nat'l, 2013 WL 1867987, at *5 ("Parker is controlling in this circuit and has not been overruled."). Moreover, the relevant portion of Parker appears analytically distinct from the court's now-discarded reasoning that FIRREA's exhaustion requirements only apply to "claims of *creditors* against [receivers] and not to challenges incident to the [receiver's] claims against its *debtors*." Parker, 24 F.3d at 1152. Still, that issue is not determinative and does not merit detailed discussion in this order.

    [9]To the extent the FDIC asserts that Stern v. Marshall, 131 S. Ct. 2609 (2011), bars the bankruptcy court from hearing this action because the adversary proceeding is non-core or does not involve an objection to a proof of claim, that argument lacks merit. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

Accordingly, having considered the FDIC's contrary arguments, the Court follows the clear weight of authority in finding that, under these circumstances, § 1821(d)(13)(D) does not mandate withdrawal of the reference.

        2.        Federal Banking Laws and Policy Statements

The FDIC also asserts that withdrawal is mandatory because an interpretation of the TSA as creating a debtor-creditor relationship would violate the Federal Reserve Act and resolution of the adversary proceeding will accordingly necessitate consideration of the effect of federal banking law. When a group of affiliated corporations elects to file a consolidated federal income tax return, applicable regulations designate the parent corporation to act as "sole agent . . . authorized to act in its own name with respect to all matters relating to the tax liability for that consolidated return year." Treas. Reg. § 1.1502-77(a)(2)(v). The Ninth Circuit has held that in the absence of an agreement to the contrary, "a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member." In re Bob Richards Chrysler-Plymouth Corp., Inc., 473 F.2d 262, 265 (9th Cir. 1973). The appellate court reasoned that "[a]llowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent." Id. The court accordingly found that the parent corporation in Bob Richards "was under a duty to return the tax refund to the estate of the bankrupt." Id.

Although the Bob Richards court noted that, under state corporation law, parties "are free to adjust among themselves the ultimate tax liability" through an express or implied agreement, the FDIC contends that interpreting the TSA as the Trustee argues it

---

Supreme Court has recently reiterated that it is proper for bankruptcy courts to "hear the [non-core] proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." Exec. Benefits Ins. Agency v. Arkison, 134 S. Ct. 2165, 2173 (2014). Here, because it affects whether property is part of a bankruptcy estate, the adversary proceeding—even if non-core—is indisputably "related to a case under title 11," and the report and recommendation procedure proper.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'   JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

should be would violate sections 23A and 23B of the Federal Reserve Act, 12 U.S.C. §§ 371c, 371c-1, and the Interagency Policy Statement on Income Tax Allocation in a Holding Company Structure, 63 Fed. Reg. 54757 (Nov. 23, 1998) ("Policy Statement"). Section 23A provides in part that a "loan or extension of credit to . . . an affiliate by a member bank or its subsidiary, and any credit exposure of a member bank or a subsidiary to an affiliate resulting from a securities borrowing or lending transaction, or a derivative transaction, shall be secured at all times by collateral having a market value" of at least 100% of the amount of the extension of credit.[10] 12 U.S.C. § 371c(c)(1); 12 C.F.R. § 223.14(b). Section 23B provides in part that a member bank and its subsidiaries may engage in certain "covered transactions" only "on terms and under circumstances, including credit standards, that are substantially the same, or at least as favorable to such bank or its subsidiary, as those prevailing at the time for comparable transactions with or involving other nonaffiliated companies." 12 U.S.C. § 37c-1(a)(1)(A); 12 C.F.R. §§ 223.51, 223.52.

The FDIC argues that if the TSA created a debtor-creditor relationship, "the extension of credit that resulted when a Bank refund was received by its parent and agent would result in an immediate and serious violation of these federal banking laws." Memo. Supp. Mot. at 19. The FDIC also cites the aforementioned Policy Statement's language that a tax sharing agreement "should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent." 63 Fed. Reg. 64759.

Other courts in this circuit have rejected similar arguments. One court found mandatory withdrawal unjustified despite the FDIC's arguments based on § 371c and the Policy Statement. See Siegel v. FDIC (In re IndyMac Bancorp Inc.), No. 2:12-cv-2967-RGK, 2011 WL 2883012, at *4–5 (C.D. Cal. July 15, 2011). With regard to the Policy Statement, the court noted that " Section 157(d) only requires consideration of laws, not non-binding policy statements. The Bankruptcy Court may choose to consider [the

---

[10]Federal regulations define "extension of credit to an affiliate" as "the making or renewal of a loan, the granting of a line of credit, or the extending of credit in any manner whatsoever . . . to an affiliate . . . ." 12 12 C.F.R. § 223.3(o).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

Policy Statement], but it is not material to adjudicate the ownership issue." Id. at *4.[11]  A year later, a different judge in this district rejected arguments based on sections 23A and 23B and the Policy Statement.  See FirstFed Fin. Corp. v. FDIC, CV 12-4914-JFW, slip op. at 3–4 (C.D. Cal. Aug. 7, 2012) (Trustee RJN Ex. 2).  That court found that the adjudication of whether a bank holding company or its subsidiary owned tax refunds "involve interpretation of a contract, and at most, if at all, will require a straightforward application of non-bankruptcy federal law to the facts." Id. at 4.  Other district courts within this circuit have concurred, finding "no authority to categorize the tax refunds [disputed by a holding company and bank] as covered transactions under 371c and 371c-1" and holding that such a situation presents "no need for "substantial and material consideration" of those statutes.  Capital Corp, slip op. at 6 (Trustee RJN Ex. 4); see also In re Imperial Capital Bancorp, Inc., 492 B.R. 25, 33–34 (S.D. Cal. May 26, 2013) (rejecting an argument that "creation of a debtor-creditor relationship under the [tax allocation agreement] would create an impermissible loan and/or extension of credit . . . in violation of . . . § 371c").  In a non-precedential opinion, the Ninth Circuit recently bolstered these decisions by concluding that sections 371c and 371c-1 are not applicable to a dispute over who owns tax refunds under a tax sharing agreement.  See In re IndyMac Bancorp, Inc., 554 F. App'x 668, 670 (9th Cir. Apr. 21, 2014) ("The FDIC's claim that recognizing a debtor-creditor relationship here would violate federal banking

---

[11] Later in the same case, the district court agreed with the bankruptcy court's finding that a similar tax sharing agreement did not violate the Federal Reserve Act.  See Siegel v. FDIC (In re IndyMac Bancorp Inc.), No. 2:12-cv-2967-RGK, 2012 WL 1951474, at *4 (C.D. Cal. May 30, 2012), aff'd on other grounds, 554 F. App'x 668 (9th Cir. Apr. 21, 2014).  The district court reasoned that the term " 'extension of credit' as interpreted through regulations applies not to *any* payment obligation, but to payment obligations akin to loans," and distinguished one of the FDIC's cited cases on this issue, as involving a tax sharing agreement that "functioned more like a loan." Id.  In the same case, the bankruptcy also court reasoned in great detail that (1) even if the section 371c applies, a similar tax sharing agreement would not violate it, and (2) that even if the agreement did violate section 371c, that statute "contemplates civil penalties . . . or regulatory action," and would not void or render unenforceable the agreement, as the FDIC seems to imply.  See Siegel v. FDIC (In re IndyMac Bancorp, Inc.), Adv. No. 2:09-ap-01698-BB, 2012 WL 1037481, at *38 (Bankr. C.D. Cal. Mar. 29, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

law is unavailing. A run-of-the-mill contract claim is not a 'covered transaction' under the federal banking laws cited by the FDIC.").

The FDIC cites only two cases that even suggest that the FDIC's proffered statutes and policy statements might be implicated, let alone necessitate "substantial and material" consideration. In one, the tax sharing agreement explicitly incorporated the Policy Statement. FDIC v. Zucker (In re Net Bank, Inc.), 729 F.3d 1344, 1348 (11th Cir. 2013). No such provision is contained in the TSA at issue. See Toral Decl. Ex. A-1. Still, the Eleventh Circuit stated in a footnote that "the absence of provisions for interest and collateral might be . . . significant [to a finding of a trust relationship], in light of the fact that under 12 U.S.C. § 371c, banks are restricted in their ability to engage in certain transactions with affiliates." Id. at 1151 n.8. In the other case cited by the FDIC on this point, the district court noted that although neither party had raised the issue, "it appears that 12 U.S.C. § 371c(1) applies" to a tax sharing agreement. BSD Bancorp, Inc. v. FDIC (In re BSD Bancorp, Inc.), No. 94-1341-IEG, slip op. at 10–12 (S.D. Cal. Feb. 28, 1995) (Toral Decl. Ex. I). The Court does not find this pair of limited discussions, however, to outweigh the persuasive value of the in-circuit authorities cited above.

In short, the clear weight of authority indicates that the federal non-bankruptcy law cited by the FDIC is either totally inapplicable to the adversary proceeding or can be applied without the need for substantial and material interpretation that would necessitate mandatory withdrawal. The Court now considers whether permissive withdrawal might nevertheless be appropriate.

> **B. Permissive Withdrawal**

As previously noted, a "district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993); see also In re Daewoo Motor Am., 302 B.R. 308, 311 (C.D. Cal. 2003) (explaining that it is "helpful to make the core/non-core determination before considering the other factors"). Next, the "district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Sec. Farms, 124 F.3d at 1008 (citing In re Orion Pictures Corp., 4 F.3d at 1101).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

1.  Core or Non-Core

"Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.' " Stern v. Marshall, 131 S. Ct. 2594, 2603 (2011) (quoting 28 U.S.C. § 157(b)(1)). Absent the parties' consent, bankruptcy judges cannot enter final judgment in non-core proceedings, but may submit proposed findings of fact and conclusions of law to the district court, which reviews *de novo* any matter to which a party objects. Id. at 2604. Generally, "[a]ctions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.' " Sec. Farms, 124 F.3d at 1008. Conversely, a "core proceeding is one that 'invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case.' " Battle Ground Plaza, LLC v. Ray (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010) (citation omitted). The Ninth Circuit has suggested that permissive withdrawal is appropriate where "non-core issues predominate." Id.

The FDIC argues that the adversary proceeding is a non-core state law contract action and cites Siegel v. FDIC (In re IndyMac Bancorp, Inc.), No. CV 11–03969-RGK, 2011 WL 2883012 (C.D. Cal. July 15, 2011). That court found a trustee's claim for declaratory relief as to the ownership of similar tax refunds non-core because it was a "dispute between private parties" and arose out of a pre-bankruptcy tax sharing agreement governed by state contract law.[12] Id. at *6. Similarly, in Tamalpais, 451 B.R. at *10–11, the court found that a declaratory judgment action between the Chapter 7 trustee of a holding company and the FDIC as receiver of a failed bank was non-core because it concerned a tax sharing agreement executed prior to the bankruptcy petition's filing. Analyzing recent Ninth Circuit cases, the court concluded, "while a claim arising from a post-petition contract regarding the property of the bankruptcy estate is a core proceeding, a claim arising from a pre-petition contract is a non-core proceeding even if

---

[12]The Siegel court, however, declined to withdraw the reference because it determined that (1) the bankruptcy court had greater familiarity with the facts, (2) withdrawal would increase costs by requiring the refiling of a pending motion for summary judgment and the filing of a venue transfer motion, and (3) bankruptcy courts "routinely resolve these types of disputes." 2011 WL 2883012, at *7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**   'O'   JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

the debtor is a party to the contract at issue." Id. (citing In re Harris, 590 F.3d 730, 741–41 (9th Cir. 2009), and In re Ray, 624 F.3d 1124, 1131–33 (9th Cir. 2010)).

    The Trustee argues that the adversary proceeding is core because it seeks a determination of what property belongs to the Bancorp estate. Some district courts have concluded, contrary to those cited above, that an adversary proceeding seeking a declaration as to the ownership of tax refunds is core because it determines "whether something is property of the [bankruptcy] estate." First Nat'l Bancshares, 2014 WL 108372, at *4; see also In re Sec. Bank Corp., No. 09–52409–JTL, 2010 WL 2464966, at *4 (M.D. Ga. June 14, 2010) ("The proceeding here is a core proceeding because it is essentially an action to determine if tax refunds are property of the estate."). Second, the Trustee argues the matter is core because it involves an issue first raised in a proof of claim. In support, the Trustee cites Langenkamp v. Culp, 498 U.S. 42, 45 (1990) (per curiam), in which the Supreme Court reasoned that by filing claims against the bankruptcy estate, parties "[brought] themselves within the equitable jurisdiction of the Bankruptcy Court." But that per curiam opinion, which involved distinguishable facts, predates significant developments in Supreme Court jurisprudence on the allocation of proceedings between district and bankruptcy courts, and the Trustee cites no other authority in support of this argument.

    The TSA preceded the bankruptcy petition by several years and, as the Trustee's complaint asserts, is governed by California law. Whatever rights the parties may have in the tax refunds at issue, they do not depend on Title 11 for their existence, and a declaratory action of this type could have been brought in a non-bankruptcy court. Therefore, the Court follows recent decisions within this circuit in concluding that the adversary proceeding is non-core.

    2.    Other Factors

    The Ninth Circuit has suggested that, because a bankruptcy court's determination of non-core matters is subject to de novo review by the district court, "unnecessary costs [can] be avoided by a single proceeding in the district court." Sec. Farms, 124 F.3d at 1009. Still, "[t]he determination of whether claims are core or non-core is not dispositive of a motion to withdraw a reference." Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc., 355 B.R. 214, 223 (D. Haw. 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

    The FDIC argues that judicial efficiency rationale favors withdrawal because there have been no substantive proceedings in the adversary proceeding, because the bankruptcy court has not yet been called upon to act on any contested matters in the underlying bankruptcy case, and because a new bankruptcy judge was recently assigned The FDIC also argues that forum shopping concerns weigh in favor of withdrawal because the Trustee positioned the action to be heard in the bankruptcy court by electing not to file a receivership proof of claim.  (This argument appears to presume that FIRREA's exhaustion requirements apply, which the Court has found unlikely.)

    The Trustee argues that judicial economy favors continued referral to the bankruptcy court that has managed the underlying bankruptcy case for five years.  The Trustee cites several district courts' decisions to decline permissive withdrawal in cases involving tax refund litigation.  See, e.g., First Nat'l Bancshares, 2014 WL 108372, at *5 (finding that the Fourth Circuit's similar permissive withdrawal factors disfavored withdrawal); FirstFed Fin. Corp., slip op. at 5 (Trustee's RJN Ex. 2) (finding withdrawal inefficient because the bankruptcy court had "a greater familiarity with the facts, routinely decides these issues, and has already ruled on an FDIC motion related to issues surrounding the ownership of the tax refund"); Capital Corp., slip op. at 12–16 (Trustee's RJN Ex. 4) (concluding that efficiency concerns weighed against withdrawal); Sec. Bank Corp., 2010 WL 2464966, at *4–5 (finding permissive withdrawal inappropriate because of the bankruptcy court's relevant experience and the lack of a jury demand).  The Trustee also argues that the FDIC invokes defenses under the Bankruptcy Code, see Trustee RJN Ex. 5 (Answer) at 9-11, and that the bankruptcy court has greater familiarity with the case notwithstanding the recent appointment of a new judge.  Finally, the Trustee asserts that the FDIC is forum-shopping by filing this motion at an early stage. See Enron Corp. v. Telplexus, Inc. (In re Enron Corp.), No. 04 Civ. 7693(RJH), 2004 WL 2912893, at *2 (S.D.N.Y. Dec. 14, 2004) ("[D]istrict courts are generally unreceptive to motions to withdraw references where the underlying action is in its preliminary stages and is closely related to proceedings already pending before the bankruptcy court."); Disbursing Agent of the Murray F. Hardesty Estate v. Severson (In re Hardesty), 190 B.R. 653, 656–57 (D. Kan. 1995) ("Allowing the pretrial matters of the adversary case to proceed in bankruptcy court discourages forum shopping.").[13]

---

    [13]As the FDIC points out, this argument puts a party seeking to withdraw a reference in a difficult position because the Ninth Circuit has counseled that for such a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:14-cv-02244-CAS | Date | December 8, 2014 |
|---|---|---|---|
| Title | *IN RE* TEMECULA VALLEY BANCORP, INC. | | |

The Court finds that principles of efficiency and uniformity of bankruptcy administration counsel keeping this adversary proceeding in the bankruptcy court. This dispute will decide whether significant assets belong to the bankruptcy estate, and bankruptcy courts in this district have recently (and ably) adjudicated similar cases. Therefore, the Court declines to permissively withdraw the bankruptcy reference.

**V.   CONCLUSION**

In accordance with the foregoing, the Court DENIES the motion to withdraw the bankruptcy reference.

IT IS SO ORDERED.

|  | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |

---

motion to be timely, it must be "made as promptly as possible in light of the developments in the bankruptcy proceeding." Sec. Farms, 124 F.3d at 1007 n.3 (quoting In re Baldwin-United Corp., 57 B.R. 751, 754 (S.D. Ohio 1985)).